IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BONNIE J.H., Plaintiff, | ) | |
| v. | ) | 1:25CV1014 |
| FRANK BISIGNANO, Commissioner of Social Security, Defendant. | ) | |

**ORDER AND MEMORANDUM OPINION OF UNITED STATES MAGISTRATE JUDGE**

The plaintiff, Bonnie J.H. ("Bonnie"), brought this action to obtain review of a final decision of the Commissioner of Social Security denying her claim for social security disability insurance benefits and a period of disability. The Court has considered the certified administrative record and dispositive briefs from each party. Because substantial evidence supports the determination of the Administrative Law Judge ("ALJ"), Bonnie's request for the award of benefits or for a remand is denied, as set forth below.[1]

I. PROCEDURAL HISTORY

Bonnie filed an application for disability insurance benefits and a period of disability in March of 2023, alleging a disability onset date of February 10, 2023. (Tr. 194-97.) The applications were denied initially and upon reconsideration. (Tr. 99-102, 105-07.) After a hearing, the ALJ determined on December 19, 2024 that Bonnie was not disabled under the Act. (Tr. 17-70.) The Appeals Council denied a request for review, making the ALJ's decision the final decision for review. (Tr. 1-6.)

II. STANDARD OF REVIEW

While Section 405(g) of Title 42 of the United States Code "authorizes judicial review of the Social Security Commissioner's denial of social security benefits," *see Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir.

[1] Transcript citations refer to the Administrative Transcript filed manually with the Commissioner's Answer. *See* Docket Entry 5. By Order of Reference, this matter was referred to the Undersigned to conduct all proceedings in this case pursuant 28 U.S.C. § 636(c). Docket Entry 13.

2006), the scope of that review is specific and narrow, *see Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Specifically, review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Put simply: the issue before the Court is not whether Bonnie is disabled but whether the finding that she is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

III. THE ALJ'S DECISION

The ALJ followed the correct process, set forth in 20 C.F.R. § 404.1520, to determine disability. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).

"The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 416.920(a)(4), 404.1520(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy.

*Id.* at 472. A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* at 473. "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citations omitted).

The ALJ determined at step one that Bonnie had not engaged in substantial gainful activity since the alleged onset date of February 10, 2023. (Tr. 19.) The ALJ next found the following severe impairments at step two: chronic heart failure, chronic kidney disease, hypokalemia, hepatic steatosis, hepatomegaly, polycystic kidney disease, generalized anxiety disorder, posttraumatic stress

disorder, and major depressive disorder. (Tr. 19.) At step three, the ALJ found that Bonnie did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 20.)

The ALJ next set forth Bonnie's Residual Functional Capacity ("RFC") and determined that she could perform a reduced range of light work:

> except lifting 20 pounds occasionally and 10 pounds frequently; carrying 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours and alternating to standing for 10 minutes after every 2 hours of sitting; standing for 6 hours and alternating to sitting for one hour after every 2 hours of standing; walking for 6 hours and alternating to sitting for 20 minutes after every 45 minutes of walking; pushing and pulling as much as can lift and carry; climb ramps and stairs occasionally; climb ladders, ropes, or scaffolds occasionally; balance occasionally; stoop occasionally; kneel occasionally; crouch occasionally; crawl occasionally; work in weather occasionally; work in humidity and wetness occasionally; work in dust, odors, fumes and pulmonary irritants occasionally; work in extreme cold occasionally; work in extreme heat occasionally; is able to perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work); is able to perform simple work-related decisions; is able to interact with supervisors occasionally; is able to interact with coworkers occasionally; is never able to interact with the public; and is able to make simple work-related decisions. The claimant's time off task includes the ability to perform simple, routine and repetitive tasks.

(Tr. 23-24.) At the fourth step, the ALJ determined that Bonnie was unable to perform her past relevant work. (Tr. 30.) Last, at step five, the ALJ concluded that there were other jobs in the national economy that Bonnie could perform. (Tr. 30.)

## IV. DISCUSSION

In her appeal, Bonnie asserts only that "[t]he ALJ erred by failing to adopt, or explain the basis for not adopting, the opinion of state agency psychological consultant Jennifer Fulmer, Ph.D. that [she] could understand and remember 'short' instructions despite finding Dr. Fulmer's opinion 'persuasive.'" Docket Entry 10 at 2-3. As set forth below, this objection fails.

A. Medical Opinions

The RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairments and any related symptoms (e.g., pain). *See* 20 C.F.R. § 404.1545(a)(1); *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (unpublished); *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

"Social Security Ruling 96-8p explains that the RFC 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations omitted). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Comm. of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Brown v. Commissioner*, 873 F.3d 251, 269 (4th Cir. 2017). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has held that "meaningful review is frustrated when an ALJ goes straight from listing the evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). Instead, the ALJ "must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (alteration in original) (quoting *Monroe*, 826 F.3d at 189). In particular, the ALJ "must build a logical bridge between the limitations he finds and the [vocational expert] evidence relied upon to carry the Commissioner's burden at step five in finding that there are a significant number of jobs available to a claimant." *Brent v. Astrue*, 879 F. Supp. 2d 941, 953 (N.D. Ill. 2012). An ALJ's failure to do so constitutes reversible error. *See Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017). Where an ALJ's "analysis is incomplete and precludes meaningful review," remand is appropriate. *Monroe*, 826 F.3d at 191.

Additionally, the longstanding requirements calling for adjudicators to weigh medical opinions and give special deference to treating source opinions have changed. *See* 20 C.F.R. § 404.1520c(a) (effective March 27, 2017). Now, adjudicators "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."[2] *Id.* Nevertheless, an ALJ must consider and articulate in the administrative decision how persuasive he or she finds each medical opinion or prior medical finding in a claimant's case record. *See id.* § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). When a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings as a class. *See id.* § 404.1520c(b)(1). The ALJ is "not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.*

As for persuasiveness, the ALJ must articulate two factors: supportability and consistency. *Id.* § 404.1520c(b)(2). Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself. *Id.* § 404.1520c(c)(1); *see also Revisions to Rules*, 82 Fed. Reg. at 5853 (defining supportability as "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation"). Consistency is an external check that references evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2); *see also Revisions to Rules*, 82 Fed. Reg. at 5853 (defining consistency as "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim"). The ALJ must only address the three other persuasiveness factors—relationship with the claimant, specialization, and the catchall "other factors"—when two or more medical opinions, or prior administrative medical findings about

[2] The new regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work activity or adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). The new regulations also define a "finding . . . about a medical issue made by . . . Federal and State agency medical and psychological consultants at a prior level of review" as a "[p]rior administrative medical finding." *Id.* § 404.1513(a)(5).

the same issue, are equally persuasive in terms of supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(3), 404.1520c(c)(3)-(5).

Also, "[s]tatements that [claimants] are or are not disabled, . . . able to work, or able to perform regular or continuing work," are statements on an issue reserved to the Commissioner. *Id.* § 404.1520b(c)(3). Statements on issues reserved to the Commissioner are deemed evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." *Id.* § 404.1520b(c)(1)-(3). The regulations also make clear that, for such claims, "we will not provide any analysis about how we considered such evidence in our determination or decision." *Id.* 404.1520b(c).

B. The ALJ Did Not Err in Omitting a Short Instructions Limitation from the RFC.

As explained earlier, Bonnie's sole objection is that "[t]he ALJ erred by failing to adopt, or explain the basis for not adopting, the opinion of state agency psychological consultant Jennifer Fulmer, Ph.D. that [she] could understand and remember 'short' instructions despite finding Dr. Fulmer's opinion 'persuasive.'" Docket Entry 10 at 2. In developing her argument, Bonnie goes on to describe Dr. Fulmer's finding that she could understand and remember short instructions as a "*restriction* to 'short' instructions." Docket Entry 10 at 13 (emphasis added). Bonnie asserts that this purported error is prejudicial because the jobs the ALJ concluded that she could perform require the performance of more than short instructions. *Id.* at 12-13.

Not so, for two reasons. First, Dr. Fulmer did not limit Bonnie to understanding and remembering short instructions. Her objection thus stands on a faulty premise and fails for that reason alone. *See Burton v. Saul*, No. 1:19CV698, 2020 WL 3415641, at *7 (M.D.N.C. June 22, 2020) ("Plaintiff's arguments gloss over the difference between having *some* degree of limitation in her ability to perform a work-related activity and having *no* useful ability to perform that activity.").

More specifically, in the RFC evaluation assessing Bonnie's understanding and memory limitation, Dr. Fulmer deemed Bonnie not significantly limited in her ability to understand and remember very short and simple instructions and only moderately limited in her ability to understand and remember detailed instructions. (*See* Tr. 94.) Significantly, Dr. Fulmer's "[m]oderately [l]imited" finding "means that [Bonnie's] ability to handle detailed instructions '[wa]s impaired,' Program Operations Manual System ('POMS'), § DI 24510.063B.2 (bold font omitted),

but not that she entirely lacked that capacity." *Burton v. Saul*, 2020 WL 3415641, at *7; *see also* POMS § DI 24510.063B.3 (defining finding of "[m]arkedly [l]imited" as "support[ing] the conclusion that the individual cannot usefully perform or sustain the activity")).

Consequently, in finding that Bonnie "can understand and remember short and simple instructions" (Tr. 94), Dr. Fulmer did not limit Bonnie to understanding and remembering *only* "short and simple instructions." Therefore, there is no discrepancy between Dr. Fulmer's opinion and the ALJ's ultimate RFC determination that omitted a limitation involving short instructions.

Dr. Fulmer also opined that Bonnie could perform the mental RFC adopted here: simple, routine, and repetitive tasks (not at a production rate pace) and simple work-related decisions with occasional interaction with coworkers and supervisors and no interaction with the public. ((Tr. 24) (ALJ's RFC adopted in this matter).) There is no error here, material or otherwise. *See, e.g.*, *Ronnie K. v. O'Malley*, No. 1:23CV324, 2024 WL 3695205, at *10 (M.D.N.C. Aug. 7, 2024) (concluding that "statement about Plaintiff's *capability* to understand and remember very short and simple instructions" contained within opinion ALJ found persuasive "did not constitute a *limitation* to very short and simple instructions"); *Gilstrap v. Kijakazi*, No. 6:22-CV-01722-MGL-KFM, 2023 WL 2761315, at *6 (D.S.C. Mar. 13, 2023) (ruling that simply because psychological consultant found that "the plaintiff was not significantly limited in her ability to understand and remember very short and simple instructions and was moderately limited in her ability to understand and remember detailed instructions" did not mean "that the ALJ should have limited the plaintiff to very short and simple instructions") (citations omitted); *Burton*, 2020 WL 3415641, at *7; *Anthony v. Berryhill*, No. 3:17CV92, 2018 WL 1567354, at *2 (W.D.N.C. Mar. 30, 2018) (holding there was no error by ALJ in finding persuasive state agency psychological consultant's opinion, which included both that the claimant could understand and follow short simple instructions and could perform simple, routine, and repetitive tasks, but not including limitation to short instructions in RFC).

Second, assuming *arguendo* that Dr. Fulmer limited Bonnie to understanding and remembering no more than short instructions, there is still no error here, because the Court can trace the ALJ's rationale for declining to adopt this limitation in the RFC. For example, Bonnie does not challenge

1) the ALJ's finding that she could perform a wide array of daily

activities, including caring for her young daughter (*i.e.*, preparing her for school, picking her up from school, and getting her ready for bed), cooking, mowing the lawn on a riding lawn mower, caring for pets, handling household chores, driving, shopping for groceries in stores, and handling the household bills. (Tr. 23, 28-29, 49, 54, 270-74, 645.)

2) the ALJ's finding that she could follow spoken instructions. (Tr. 22, 273 ("How well do you follow spoken instruction? Good for the most part.").) Similarly, Bonnie does not contest the ALJ's finding that at the administrative hearing, she remained focused, stayed on topic, and showed no obvious signs of being distracted or unable to follow the conversation. (Tr. 22.)

3) the ALJ's conclusion that her mental status reports were often normal. For example, the ALJ found that she often presented on examination with good recent and remote memory for medical events, normal cognition, friendly and cooperative presentation, coherent organization of thought, unremarkable speech quality, normal intellectual functioning, appropriate mood and affect, good judgement and insight, full orientation, and normal thought content and perception. (Tr. 22, 27-28, 562, 578, 590, 597-98, 611, 640, 729, 735, 774, 794, 905, 910, 926, 1103.)

4) the ALJ's assessment of a non-examining state agency psychologist, Dr. Susan Stanton, Ph.D., who did *not* limit her to understanding and remembering short instructions. (Tr. 28, 77, 81.) Instead, Dr. Stanton found Bonnie could perform simple tasks; could understand, retain, and follow simple, concrete instructions without difficulty; and could ask for assistance when needed. (Tr. 77, 82.)

5) the ALJ's assessment of the medical opinion of Dr. Philip Hatfield, Ph.D., an examining state agency psychologist, who did *not* limit her to understanding and remembering short instructions. (Tr. 29.) In pertinent part, Dr. Hatfield opined that Bonnie was *unimpaired* in understanding, retaining, and following brief, simple, concrete instructions without frequent repetition or reminders. (Tr. 29, 647.) Dr. Hatfield also found Bonnie *only moderately impaired* in retaining and carrying out detailed instructions without frequent repetition or reminders. (Tr. 29, 647.) Dr. Hatfield did not limit Bonnie to

understanding or remembering short instructions.

The ALJ agreed that Bonnie had limitations and like Dr. Hatfield, he found her moderately limited in functional areas. (Tr. 22-23, 29.) Like Dr. Hatfield, the ALJ found that Bonnie could perform simple tasks. (Tr. 24, 647.) The ALJ also found Dr. Hatfield's opinion consistent with the medical evidence as a whole and accurately reflective of Bonnie's symptoms as shown on exam, as reported to providers, and as she testified at the hearing. (Tr. 29.) Therefore, the ALJ found Dr. Hatfield's opinion persuasive. (Tr. 29.) The ALJ explained that his RFC assessment accounted for all of Bonnie's limitations, and more restrictive limitations were not warranted based on the evidence, including Bonnie's wide array of activities and mild symptoms at mental health appointments. (Tr. 29.)

For all these reasons, Bonnie's sole objection fails. Dr. Fulmer did not limit her to understanding and remembering no more than short instructions. In fact, no doctor did. Therefore, the ALJ did not err in failing to adopt such a restriction. Beyond this, even if Dr. Fulmer's statement that Bonnie had the capacity to "understand and remember short and simple instructions" (Tr. 94) were treated as a restriction concluding that Bonnie could only understand and remember short instructions, the ALJ's assessment of Bonnie's activities of daily living, the medical records, and the medical opinions provides a sufficient explanation for declining to adopt it into the RFC.

Bonnie's objections are not persuasive. She asserts that "when Dr. Fulmer assessed [her] mental RFC, her opinion that [Bonnie] 'can understand and remember short and simple instructions' represents her assessment of the most [Bonnie] can still do." Docket Entry 12 at 1. However, Dr. Fulmer did not restrict Bonnie to short instructions.

Bonnie also objects that "where the ALJ purports to follow a medical opinion, the ALJ must include, or explain the basis for excluding, limitations from that opinion." Docket Entry 12 at 2. This is true. *See* SSR 96-8p, 1996 WL 374184, at *7 (Jul. 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). However, there was no "limitation" regarding short instructions in Dr. Fulmer's opinion. And, even assuming otherwise, the ALJ gave good reasons for not limiting Bonnie to understanding and remembering only short instructions. For these reasons, Bonnie's additional contention that there is an "unresolved material conflict in the record" between the opinions of Dr. Fulmer and Dr. Stanton, Docket Entry

10 at 12, is unpersuasive. Neither doctor *limited* Bonnie to understanding and remembering only short instructions and so there is no conflict. (Tr. 77, 81-82, 94.)

Last, the caselaw Bonnie cites does not undermine the Court's conclusions. *Ezzell v. Berryhill* does not require a different outcome here. 688 F. App'x 199, 201 (4th Cir. 2017) (unpublished). Bonnie cites *Ezzell* for the proposition that an ALJ cannot implicitly reject portions of a doctor's opinion that are inconsistent with her RFC without a thorough discussion. Docket Entry 10 at 3-4. But Bonnie's case is distinguishable from *Ezzell* because Dr. Fulmer's opinion is not inconsistent with the RFC determination and, beyond that, the ALJ adequately discussed the evidence and explained her reasoning in omitting any limitation regarding short instructions.

Nor does *Chambless v. Saul*, No. 1:19-cv-00322-MR-WCM, 2020 WL 5577883, at *4 (W.D.N.C. Sept. 17, 2020) require a different outcome here. *See* Docket Entry 10 at 14-15. There, the ALJ reversibly erred by according great weight to a state agency psychological consultant's opinions, which included both that the claimant could understand and follow short simple instructions and could perform simple, routine, and repetitive tasks, but not including a limitation to short instructions in RFC. *See Chambless*, 2020 WL 5577883, at *4. The instant matter is factually inapposite because here, the ALJ clarified why he did not include a limitation related to short instructions in the RFC. For all these reasons, Bonnie's objection lacks merit.

V. CONCLUSION

The Commissioner's decision is legally correct, supported by substantial evidence, and susceptible to judicial review.

Accordingly, **IT IS HEREBY ORDERED** that the final decision of the Commissioner is upheld.

JoAnna Gibson McFadden
United States Magistrate Judge

September 30, 2026